UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JAMES E. LOONEY,                                          Civil No. 09-1139-HA

           Plaintiff,

                                  OPINION AND ORDER

   v.

WASHINGTON COUNTY, OREGON,
WASHINGTON COUNTY SHERIFF'S
OFFICE, and SHERIFF ROBERT GORDON,
UNDERSHERIFF DAVID HEPP, LT.
MICHAEL LENAHAN, SGT. ERROLL
McCREA, SGT. KIM PHILLIPS, and
SGT. GREGORY KISOR, each individually,

           Defendants.
_____

HAGGERTY, District Judge:

      Plaintiff brought suit against defendants asserting seven claims.  These claims allege

violations of the Americans' with Disabilities Act (ADA) and Oregon's Discrimination Against

Disabled Persons in Employment Act (Oregon Act), workers' compensation discrimination,

intentional infliction of emotional distress, violation of plaintiff's Fourth Amendment rights,

intrusion upon seclusion, and retaliation in violation of  42 U.S.C. § 2000e-3(a) (Title VII).

      Defendants move for summary judgment on all claims in plaintiff's First Amended

Complaint.  The court held oral argument on this motion on June 27, 2011.  During the hearing,

1 - OPINION AND ORDER

plaintiff agreed to dismiss Robert Gordon, David Hepp, and Gregory Kissor.  For the following

reasons, defendants' Motion for Summary Judgment [36] is GRANTED IN PART AND

DENIED IN PART.

Defendants also moved to strike plaintiff's Exhibit 1, attached to the declaration of Frank

Wesson.  After receiving the motion to strike, plaintiff voluntarily withdrew that exhibit.

Accordingly, defendants' Motion to Strike [73] is DENIED AS MOOT.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  On summary judgment, the court must view the facts and draw inferences in the manner

most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).  The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact for trial, but it need not disprove the other party's case.  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, the

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

but must set forth specific facts showing that there is a genuine dispute for trial.  *Id.* at 248-49.

All reasonable doubt as to the existence of a genuine factual dispute should be resolved against

the moving party.  *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th

Cir. 2005) (citation omitted).

## BACKGROUND

The following facts are undisputed unless otherwise noted.  They are presented in the

light most favorable to plaintiff, the non-moving party.

2 - OPINION AND ORDER

Plaintiff is a former employee of the Washington County Sheriff's Office (WCSO). Plaintiff was hired on August 5, 2002, and was discharged on February 27, 2009. At discharge he was a Deputy Sheriff assigned to the patrol division.

The remaining individual defendants are: Lieutenant (Lt.) Michael Leanahan, command officer for WCSO; and Sergeant (Sgt.) Erroll McCrea and Sgt. Kim Phillips, supervisors employed by WCSO.

Plaintiff suffers Post Traumatic Stress Disorder (PTSD). His PTSD was triggered by two fatal crashes in 2005 to which plaintiff responded as a patrol officer. Both incidents involved decapitations. Plaintiff removed himself from patrol duties after the second crash and sought psychiatric treatment. Plaintiff filed a workers' compensation claim (WCC) for PTSD related to these crashes on March 8, 2007. Plaintiff's claim was accepted.

Prior to plaintiff's WCC, an internal affairs (IA) investigation was initiated on January 14, 2007. This investigation concerned plaintiff's failure to correct reports and plaintiff's perceived untruthfulness. The investigation file was submitted to Under Sheriff Hepp, who determined that there was insufficient information to sustain an allegation of untruthfulness. However a class II violation was sustained.[1]

Plaintiff's comments made during the 2007 IA investigation created doubt as to whether plaintiff could safely perform the duties of a patrol deputy. Plaintiff failed a fitness-for-duty

---

[1] "WCSO categorizes allegations of misconduct as either 'Class I' or 'Class II' allegations. Class I violations typically include misconduct regarding use of force, false arrest, unlawful search and seizure, workplace harassment or discrimination, dishonesty, violations of civil rights, or violations of criminal statutes. Class II allegations typically involve less serious violations of WCSO policies, procedures, and rules, or County personnel policies or minor performance issues." Defs.' Mem. at 7.

evaluation given by Dr. David Corey, a Washington County contracted psychologist. This evaluation indicated that plaintiff could work as a corrections deputy. Soon thereafter Lt. Mori gave plaintiff three options regarding his employment: (1) return to Dr. Corey and be found fit-for-duty; (2) resign and apply to the Corrections Division; or (3) resign from the Sheriff's office. However, Lt. Mori withdrew the first option.

Plaintiff informed Lt. Gilbert MacGregor that he would not take the position with the corrections department. Plaintiff was subsequently placed on discretionary leave because he failed his fitness-for-duty examination. Plaintiff was escorted to the rear exit of the Sheriff's Office in view of his co-workers. Additionally, Lt. Lenahan sent a department-wide e-mail advising that plaintiff could not enter the secure portion of WCSO unescorted. This message was sent typically when officers had been fired or had resigned. Plaintiff received a call on March 19, 2007 from Commander Marva Eberhard informing him he had been cleared to return to light work.

Plaintiff's primary care physician signed a Physician's Release Form on April 11, 2007 indicating that plaintiff did not have a qualifying disability needing to be accommodated. Doctor Corey reevaluated plaintiff on April 19, 2007 and found him fit-for-duty.

Three months later, plaintiff received a below-standard annual evaluation. The review contained inaccuracies and included events dating back to 2002. Initially the annual evaluation indicated plaintiff was below standard in one area; however, after plaintiff grieved the report he was found to be below standard in three areas. Plaintiff's merit pay increase was denied.

A formal investigation was opened on October 10, 2007 regarding plaintiff's alleged mishandling of evidence and backdating of forms following a hit-and-run incident. Sheriff

Gordon sustained these allegations.  Plaintiff was provided written notice of the Sheriff's findings and was given a forty-hour suspension without pay, a work improvement plan, and formal notice that any further misconduct would result in plaintiff's termination.  Plaintiff acknowledged that he agreed with the punishment and did not grieve its imposition to his union.

Plaintiff was again referred to Dr. Corey for another fitness-for-duty evaluation.  Doctor Corey found plaintiff fit-for-duty.

Several weeks later, plaintiff arrested a mentally disabled person (Mychal Vangel) at a group home.  A judge had ordered Vangel's arrest for probation violations if he acted violently towards his care givers.  The judge and Vangel's probation officer filed complaints against plaintiff.  Commander Mori reviewed the complaints and sent them to Sheriff Gordon.  Gordon recommended an IA investigation.  Chief Deputy Garrett assigned the incident to the WCSO Professional Standards Unit (PSU), and Commander Mori reassigned plaintiff to administrative work.  The formal allegations included: unprofessional conduct, untruthfulness, lack of courtesy and respect, lack of cooperation, neglect of duty, unjustified threat of the use of force, and violation of the patrol general operations manual concerning duty notebooks.  These allegations were sustained by Sheriff Gordon.  During the IA investigation plaintiff filed another WCC on November 26, 2008.  Plaintiff was notified that this claim was denied.

During the investigation, Sgt. McCrea and Sgt. Phillips ordered plaintiff to produce his county-owned duty notebook.  Under Sheriff Hepp ordered the lock removed from plaintiff's locker so that the WCSO could retrieve the notebook.  Sergeant McCrea cut the lock and searched plaintiff's locker in the presence of Sgt. Phillips and Kisor, without notification to plaintiff, without plaintiff's consent, and without the presence of plaintiff's union representative.

5 - OPINION AND ORDER

Plaintiff was ordered to remove his items from his locker on February 11, 2009. Plaintiff then discovered that his handgun was missing. An inventory of his locker performed on December 4, 2008 indicated the presence of the gun. Accordingly, plaintiff contends his locker was re-entered between December 4, 2008 and February 11, 2009. Plaintiff was terminated on February 27, 2009.

Plaintiff filed a grievance pursuant to his labor agreement with Washington County, and he chose to litigate his termination through arbitration. The arbitrator ruled that the WCSO had proven by clear and convincing evidence that it had "just cause" for firing plaintiff.

Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) on April 1, 2009, and the same charge was filed with the Equal Employment Opportunity Commission (EEOC) on April 13, 2009.

## DISCUSSION

Defendants move for summary judgment on all seven claims in plaintiff's First Amended Complaint. Defendants' arguments will be addressed in turn.

**1.    Disability Claims**

Plaintiff asserts his PTSD is a qualifying disability under the ADA and the Oregon Act.

The ADA protects a "qualified individual with a disability" from certain kinds of discrimination. 42 U.S.C. §§ 12112(a), 12132. To obtain the protections of the ADA an employee must first show that he or she qualifies as "disabled" under the Act. A person is considered disabled if he or she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); ORS 659A.104(1). Three factors are

considered in determining whether an individual is substantially limited in a major life activity:

"(1) The nature and severity of the impairment; (2) the duration or expected duration of the

impairment; (3) the permanent or long-term impact, or the expected permanent or long-term

impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). One must have an actual

disability to fall within this definition. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 476-77

(1999).

Under the regulations, "major life activity" means "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

29 C.F.R. § 1630.2(I); *see also* ORS 659A.104(2)(a-z) ("caring for oneself, performing manual

tasks, ambulation, communicating, transportation, education, socializing, thinking, employment

and ability to acquire rent or maintain property").

"Substantially limited" refers to the inability to perform a major life activity as compared

to the average person in the general population or a significant restriction "as to the condition,

manner, or duration" under which an individual can perform the particular activity. 29 C.F.R. §

1630.2(j)(1)(I)-(ii); *see also Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539-40 (9th Cir.

1997).

Plaintiff has not established that he suffers from a mental or physical impairment that

affects one or more of his major life activities as defined in 42 U.S.C. § 12102(2). Plaintiff

contends that his PTSD is disabling because it prevents him from working as a police officer

when he is not on medication. Plaintiff acknowledged in his briefing that he could have worked

as a corrections officer, but choose not to. The inability to work in a single job is not an

impairment that affects a major life activity as defined in either 29 C.F.R. § 1630.2(I) or ORS

7 - OPINION AND ORDER

659A.104(2)(a-z), as it does not rise to the level of being prevented from "walking, seeing, hearing, speaking, breathing, learning, [or] working.  29 C.F.R. § 1630.2(I).

Assuming that plaintiff's PTSD substantially limits a major life activity because plaintiff is asymptomatic when on medication, he cannot be construed as disabled under either the ADA or the Oregon Act.  The Supreme Court held in *Sutton v. United Airlines* that "a person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  527 U.S. at 482-83. Plaintiff's counsel conceded during oral argument that while he is on medication his PTSD does not impact his ability to be a police officer, and that medication enables him to perform all of the duties of a police officer without the need of accommodation.  Additionally, Dr. Corey opined that plaintiff was fit-for-duty, and plaintiff's primary care physician indicated that the plaintiff needed no accommodation and could perform all of the functions of a police officer.  Plaintiff does not have an impairment that presently "substantially limits" a major life activity, and so cannot show that he qualifies as a disabled person under the ADA or the Oregon Act.  *See* 42 U.S.C. §12102; ORS 659A.104.

Plaintiff also alleges that he has a record of impairment as defined in 42 U.S.C. § 12102(2)(B).  A "record" of a disability means either having a "history of, or having been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k); s*ee also Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004) (holding that a doctor's letter describing stress-related physical ailments did not constitute such a record because none of the treated impairments substantially limited any major life activity).  Plaintiff contends that his record of PTSD constitutes a "record

8 - OPINION AND ORDER

of impairment." For the reasons discussed, no genuine dispute exists as to whether plaintiff's

PTSD is a substantially limiting impairment, and any record of his PTSD would not meet the

requirements of 29 C.F.R. § 1630.2(k). Accordingly, defendants' Motion for Summary

Judgment is GRANTED as to plaintiff's Second and Third Claims for relief alleging disability

discrimination under the ADA and Oregon Act.

**2.      Retaliation Claim**

Plaintiff asserts that defendants retaliated against him in violation of Title VII. Title VII

prohibits discrimination by an employer against an employee on grounds that his or her employee

"opposed any practice made an unlawful employment practice by this subchapter, or because he

[or she] has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing. . . ." 42 U.S.C**.** § 2000e-3(a).

To make out a prima facie case under Title VII a plaintiff must establish that (1) he or she

acted to protect Title VII rights, (2) an adverse employment action was thereafter taken against

the plaintiff, and (3) "a causal link exists between these two events." *Steiner v. Showboat*

*Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376

(9th Cir. 1988)). Once the plaintiff establishes these elements, the burden shifts to the defendant

to provide a non-retaliatory reason for the adverse action(s). *Id.* at 1464-65. If the defendant

meets its burden, the plaintiff must show that the defendant's reasons are pre-textual. *Id.*

Plaintiff fails to indicate any action that he took to protect his Title VII rights, and has

provided no evidence to support such a claim. Accordingly, defendants' motion for summary

judgment on plaintiff's First Claim for retaliation under 42 U.S.C. §2000 e-3a is GRANTED.

9 - OPINION AND ORDER

3.      **Workers' Compensation Discrimination**

Plaintiff asserts that defendants discriminated against him because he filed a WCC. Defendants assert that plaintiff's claim is barred by the applicable statute of limitations.  Under ORS 659A.875, employees are barred from bringing an action for unlawful employment practices unless they are brought within one year of the discrimination or, if a claim has been filed with the BOLI, within one year of a BOLI complaint.  Here plaintiff filed a BOLI complaint on April 1, 2009, and plaintiff was discharged on February 27, 2009.  Plaintiff's claim is timely.

An employer may not discriminate against an employee for invoking the workers' compensation system.  ORS 659A.040(1).  To advance his claim for workers' compensation discrimination, plaintiff must establish "(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against [the employee] in the tenure or terms of employment because he or she invoked the workers' compensation system."  *Kirkwood v. W. Hyway Oil Co.*, 129 P.3d 726, 729 (Or. Ct. App. 2006) (citations and quotation marks omitted).  This court applies the burden shifting analysis from *McDonnell Douglas* for claims brought under ORS 659A.  *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001).

Under the first step of the *McDonnell Douglas* burden shifting regime, the plaintiff must make a prima facie showing.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The requisite degree of proof necessary to establish a prima facie case of discrimination "is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Plaintiff has established a prima facie case of unlawful discrimination because he (1) invoked the workers' compensation system by filing two separate WCCs, (2) suffered an adverse employment action by his termination, (3) and referenced the proximity between plaintiff's application for workers' compensation benefits, November 26, 2008, and his termination, February 27, 2009. *See, e.g.*, *Miller v. Fairchild, Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (noting that unlawful discrimination may be inferred where the protected activity and adverse employment action are closely related in time).

With the establishment of a prima facie case, the burden shifts to the employer to articulate a legitimate and nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 804. Defendants cite the arbitrator's findings that plaintiff's termination was for "just cause" as evidence of their legitimate and nondiscriminatory reason for firing plaintiff. Defs.' Reply at 5. The weight afforded by the court to an arbitrator's decision is "determined in the court's discretion with regard to the facts and circumstances of each case." *Alexander v. Garner-Denver*, 415 U.S. 36, 60 n.21 (1974).

The Supreme Court has identified several factors to consider in making this determination, including the "adequacy of the record with respect to the issue of discrimination." *Id.* The Court ruled in *Alexander* that when the arbitrator gave full consideration to an employee's Title VII rights, a court may afford great weight to the arbitrator's decision. *Id.* In this case, the arbitrator gave no weight to the issue of discrimination. The issue of discrimination appears nowhere in the arbitrator's findings. Therefore, this court will not defer to the arbitrator's decision, or consider it as evidence of defendants' nondiscriminatory reasons for terminating plaintiff.

11 - OPINION AND ORDER

Defendants also assert that the timing of the IA investigation that resulted in plaintiff's termination is evidence of their legitimate and nondiscriminatory motives because the investigation began before plaintiff filed his WCC on November 26, 2008. This argument fails on two grounds. First, while the investigation had already started, the decision as to sanctions had not been made at the time that plaintiff filed his WCC. This WCC may have had some impact on the decision to sustain the allegation and terminate plaintiff's employment. Second, plaintiff also filed a WCC on March 8, 2007, which was prior to the initiation of the IA investigation.

However, plaintiff's past history of misconduct provided a legitimate and nondiscriminatory reason for the negative employment action taken against plaintiff. Defendants' cite plaintiff's October 2007 IA investigation, in which plaintiff was found to have mishandled evidence and was warned that any further misconduct would result in plaintiff's termination. Plaintiff elected not to appeal the finding. Defendants further cite the incidents surrounding the second IA investigation, in which plaintiff had been reported by a judge and a probation officer regarding plaintiff's mishandling of the arrest. After these allegations were sustained, defendants elected to terminate plaintiff's employment consistent with the warnings that were given to plaintiff.

Because defendants have provided a legitimate and nondiscriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to provide evidence that the reasons are pretextual. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The Ninth Circuit has held that, "the mere existence of a prima facie case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment. . . .

The plaintiff must do more than establish a prima facie case and deny the credibility of the defendant's witnesses." *Wallis*, 26 F.3d at 890 (internal citation marks and citations omitted). However, the plaintiff need not always "introduce evidence beyond that already offered to establish her prima facie case," but may rely on the evidence and declarations already submitted. *Miller*, 797 F.2d at 732.  Generally, the issue of an employer's true motivations are unsuitable for disposition on summary judgment because the issue is such an "elusive factual question." *Id*. at 733 (citation omitted).

Plaintiff asserts that after his first WCC on March 8, 2007, defendants retaliated against plaintiff and that this retaliation escalated until he was eventually discharged.  Plaintiff cites defendants' allegedly unjust criticism of his job performance, his denial of a merit pay-increase, and his suspension for insubordination (even though insubordination was outside the scope of the IA investigation).  Although these events fall outside of the statute of limitations period, they indicate a possible past history of discrimination.  When taken with the timing of plaintiff's termination and his filing of a WCC, genuine factual disputes as to defendants' true motivations exists.  Accordingly, summary judgment on plaintiff's Fifth Claim for workers' compensation discrimination is DENIED.

**4.      Intentional Inflection of Emotional Distress (IIED)**

Plaintiff claims that defendants engaged in numerous acts that were intended to inflict emotional distress on plaintiff.  Defendants assert that plaintiff's claim for IIED is barred by the statute of limitations and fails as a matter of law.[2]

---

[2] Defendants concede that proper tort claim notice was given for the IIED claim only for purposes of their motion for summary judgment.

13 - OPINION AND ORDER

### A.    Statute of limitations

The statute of limitations for state tort claims is two years.  ORS 12.110.  Because an element of IIED is emotional distress, the statute of limitations does not begin to run until the plaintiff suffers that distress.  *Barrington ex rel. Barrington v. Sandberg*, 991 P.2d 1071, 1074 (Or. Ct. App. 1999) (citation omitted).  If the individual incidents could in and of themselves satisfy the elements of IIED, then the statute of limitations runs from the individual incidents.  *Id.* However, if the incidents are not separately actionable and may be viewed as a systematic pattern of conduct that led to a specific injury, then the statute of limitations runs from the date of the last incident.  *Id.* (citation omitted).

Plaintiff asserts that defendants' ongoing course of conduct culminated into an IIED claim during the IA investigation in late 2008.  Viewing the facts in the light most favorable to plaintiff, his emotional distress became actionable in the fall of 2008, well within the two year statute of limitations.  Plaintiff's IIED claim is not time barred.

### B.    Elements of IIED Claim

A claim for IIED contains three elements: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct."  *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995) (quoting *Sheets v. Knight*, 779 P.2d 1000 (Or. 1989)).  The defendant "intends" to cause severe emotional distress if he or she "knows that such distress is certain, or substantially certain to result from his conduct."  *Id.* at 853.

While the issue of the severity of the defendant's conduct is typically a jury question, the trial court must play a "gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v Hicks*, 179 P.3d 730, 736 (Or. Ct. App. 2008). The classification of conduct as "extreme and outrageous" is "depend[ent] upon both the character and degree of the conduct." *Id.* The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Oregon courts consider this determination to be a fact-specific inquiry based upon "social standards rather than of specific occurrences." *Id.* (citation omitted).

Courts are more likely to consider behavior as outrageous if it is "inflicted on the more vulnerable partner in a 'special relationship' such as employer-employee." *Clemente v. State*, 206 P.3d 249, 255 (Or. Ct. App. 2009) (citations omitted). To be actionable, a managerial decision must include "aggravated acts of persecution that a jury could find beyond all tolerable bounds of civilized behavior." *Id.* (citations omitted).

In addition to his termination, plaintiff alleges that defendants engaged in the following conduct as the basis for his IIED claim:

- Verbal harassment;
- Diminishing plaintiff's scope of work and benefits;
- Suspending plaintiff and marching him through the Sheriff's office;
- Sending out a department-wide e-mail that plaintiff was not permitted in the secure portions of the Sheriff's office;
- Making false statements on plaintiff's personnel evaluation;

15 - OPINION AND ORDER

- Not speaking to plaintiff;
- Refusing to participate in plaintiff's recovery and rehabilitation/treatment program;
- Attempting to force plaintiff to take a demotion or resign.

While each act may not be actionable on its own, plaintiff asserts that the totality of these actions constituted "extraordinary transgressions of the bounds of socially tolerable conduct." These claims must also be analyzed based on the special relationship between plaintiff and defendants due to their employer-employee relationship. This special relationship is one that "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *McGanty*, 901 P.2d at 851.

Defendants' actions viewed in their entirety, and when combined with the special relationship between the parties, present a genuine dispute as to whether there were extraordinary transgressions of the bounds of socially tolerable conduct. Defendants' motion for summary judgment on plaintiff's Fourth Claim for IIED is DENIED.

## 5.    Fourth Amendment

Plaintiff asserts that he had a privacy interest in his locker and that defendants unconstitutionally violated this interest by cutting his lock and entering his locker.

The Supreme Court has held that the Fourth Amendment applies when the government acts in its capacity as an employer. *City of Ontario, Cal. v. Quon*, ___ U.S. ___, 130 S. Ct. 2619, 2627 (2010). However, the "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable for government employers." *Id.* at

2628 (quoting *O'Connor v. Ortega*, 480 U.S. 709, 725 (1987)) (internal quotation marks omitted).

The Supreme Court identified two analytical frameworks for Fourth Amendment claims against government employers, but did not resolve which framework should be used. *Id*. at 2628-2629. Both frameworks derive from *O'Connor v. Ortega*. The first framework requires the court to consider the "operational realities of the workplace" to determine whether an employee's Fourth Amendment rights are implicated. *Id*. at 2628. Under this framework the court must determine whether an employee has a reasonable expectation of privacy on a case-by-case basis. *Id*. "Next, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.* (citations omitted).

The second framework provides that "the offices of government employees . . . are covered by Fourth Amendment protections as a general matter . . . but that government searches to retrieve work-related materials or to investigate violations of workplace rules – searches of the sort that are regarded as reasonable and normal in the private-employer context – do not violate the Fourth Amendment." *Id*. (internal citations and quotations omitted).

The Ninth Circuit interprets the *O'Connor* decision to hold (1) that government employers do not need search warrants or probable cause to search an employee's office for work-related reasons, (2) such a search does not violate the Fourth Amendment if it is reasonable under the circumstances, and (3) "the search must be justified at its inception and . . . reasonably related in scope to the circumstances that justified it." *United States v. Gonzalez*, 300 F.3d 1048,

1053 (9th Cir. 2002).  The Ninth Circuit has not indicated which of the two frameworks the

district courts should apply.  *Delia v. City of Rialto*, 621 F.3d 1069, 1076 (9th Cir. 2010).

Defendants cite to a Ninth Circuit decision that predates *Quon* and *O'Connor.  See*

*Shaffer v. Field*, 484 F.2d 1196, 1197 (9th Cir. 1973).  In *Shaffer*, the court held that the

warrantless entry of the petitioner's locker at the Sheriff substation without consent does not

violate the Fourth Amendment because "the circumstances under which the lockers were held

and used by sheriff's employees demonstrate that there was no reasonable expectation of privacy

in their use, there was no 'search' within the meaning of the Fourth Amendment."  *Id*.  However,

*Shaffer* was decided before *O'Connor*.  This court will apply the *O'Connor* frameworks.

Under the first framework, this court must determine whether plaintiff had a "reasonable

expectation of privacy."  *Quon*, 130 S. Ct. at 2628.  Plaintiff puts forth two major arguments as

to why he had a privacy interest in his locker.  First, plaintiff cites the fact that defendants

allowed him to place his own lock on the locker.  Second, plaintiff asserts that there was a "long

standing past practice of respecting employee's expectations of their right to personal privacy,

regarding their lockers and personal affects."  Pl.'s Mem. at 24.  Plaintiff submits a statement

from a former President of the Washington County Police Officers' Association in which the

President stated, "the deputy was permitted to use his personal lock instead of the one furnished

by the county in order to insure the expectation of privacy."  Duncan Decl. at 3.

Defendants assert that WCSO Policy 553-R05 explicitly states that there is no privacy

right attached to the storage lockers.  *See* Defs.' Mem. at 3.  Furthermore, the policy states that

entry may be made into the county owned locker when "the Sheriff has reasonable suspicion that

evidence of work-related misconduct may be found therein."  *See* Defs.' Ex. 38, p. 3.  These

18 - OPINION AND ORDER

WCSO Policies were agreed to in plaintiff's negotiated employment agreement: "Internal investigations will be conducted in accordance with the Office's Internal Investigation Procedures." Defs.' Ex. 1, p. 7, § 31.3. Plaintiff admitted that he is responsible for knowing and complying with all WCSO policies. Defs.' Ex. 75, pp. 2-3. The evidence provided by both parties establishes the existence of a factual dispute regarding plaintiff's privacy interest in his locker.

Additionally, both frameworks require that the search be reasonable. *Quon*, 130 S. Ct. at 2628. One approach requires that the search be judged by a "standard of reasonableness," while the other requires that the search be "regarded as reasonable and normal in the private-employer context. . . ." *Id.* Plaintiff asserts that an established and accepted departmental practice required that either the Under Sheriff or a union representative be present during all locker searches. *See* Duncan Decl. at 3. Because neither of these persons was present, the search was unreasonable.

Defendants contend that the search was reasonable because they had asked plaintiff to surrender his notebook and plaintiff did not comply, and plaintiff stated that he was out of the office on sick leave. Defendants assert that they needed to search the locker because it was unknown when plaintiff would return and they had an ongoing investigation.

The reasonableness of defendants' actions cannot be resolved as a matter of law at this time. Accordingly, defendants motion for summary judgment is DENIED as to plaintiff's Seventh Claim.

Defendants contend that the named defendants are entitled to qualified immunity for their actions. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendants are entitled to qualified immunity where they "reasonably could have believed that

their conduct was lawful 'in light of clearly established law and the information that they

possessed.'" *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 973 (9th Cir. 1996) (citation

omitted). When analyzing an assertion of qualified immunity, the court must look at the

particular facts of the case and the particular rights invoked. *Anderson v. Creighton*, 483 U.S.

635, 640 (1987).

Defendants contend that they are entitled to qualified immunity because they entered

plaintiff's locker in accordance with county policies. However, this court must analyze the facts

in a light favorable to plaintiff. In that light, defendants knew that plaintiff had an expectation of

privacy in his locker and violated the established practice in the WCSO by entering his locker

without the presence of certain persons. A reasonable person in this situation would believe that

the entry was unlawful. Defendants' request for qualified immunity is rejected.

**6.    Instruction Upon Seclusion**

Plaintiff asserts that defendants intruded upon his privacy by entering his locker.

Defendants respond that plaintiff failed to give timely notice of his claim and cannot establish

evidence in support of his claim.

**A.    Tort Claim Notice**

Defendants claim that plaintiff's privacy tort is barred because there was not proper tort

notice made to the county pursuant to ORS 30.275 (1) and (2)(b). Oregon requires that notice

must be provided to the state within 180 days of the tortious act. ORS 30.275. Defendants assert

that this should be calculated from plaintiff's initial notice that his locker was opened, December 2, 2008. Plaintiff sent his tort claim notice on June 30, 2009, or 210 days later.

Plaintiff asserts that proper notice was given because his locker was reopened at some unspecified time between December 4, 2008, when the inventory of his locker was made, and February 11, 2009, when plaintiff discovered that his handgun was missing. Depending on when the gun was removed, somewhere between 139 and 208 days elapsed. Plaintiff further asserts that each time the locker was re-entered constituted a discrete tort.

No exact date has been proffered by either party regarding if or when defendants re-entered plaintiff's locker to remove his gun. However, viewing the facts in the light most favorable to plaintiff, this court will presume the entry occurred within 180 days before plaintiff gave formal tort notice.

### B.    Intrusion Upon Seclusion Claim

Oregon's tort for intrusion upon seclusion mirrors the Restatement (Second) of Torts. The restatement provides that one "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his [or her] private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the [or her] intrusion would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B (1977). The Oregon Supreme Court has determined that to prove a claim, the plaintiff must be able to "prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Mauri v. Smith*, 929 P.2d 307, 310 (Or. 1996). A person commits an intentional intrusion "if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is

substantially certain to result from committing the invasive act in question." *Id*.  The plaintiff

bears the burden of proving all elements, including the defendants' state of mind.  *Id.*

As indicated, a genuine dispute exists as to whether plaintiff had a privacy interest in his

locker and whether defendants' actions were reasonable.  These factual disputes preclude

summary judgment.  Defendants' Motion for Summary Judgment on plaintiff's Sixth Claim for

intrusion upon seclusion is DENIED.

## **CONCLUSION**

For the reasons provided, defendants' Motion for Summary Judgment [36] is GRANTED

IN PART AND DENIED IN PART.  Defendants are entitled to summary judgment on plaintiff's

First (Retaliation), Second (ADA), and Third (Oregon Act) Claims for relief.  Summary

Judgment is DENIED as to plaintiff's remaining claims.  Defendants Robert Gordon, David

Hepp, and Gregory Kissor are dismissed from this case.  Defendants' Motion to Strike [73] is

DENIED AS MOOT.

The parties are also ordered to confer regarding whether this case is appropriate for

referral to the services of a settlement judge, or to the court-directed mediation services under the

supervision of former Oregon Supreme Court Justice Susan Leeson.  Counsel are invited to

contact this court if such a referral is deemed appropriate.

IT IS SO ORDERED.

DATED this <u>13th</u> day of July, 2011.


        <u>    /s/ Ancer L. Haggerty        </u>
              Ancer L. Haggerty
              United States District Judge


22 - OPINION AND ORDER